736 F.2d 507
 116 L.R.R.M. (BNA) 3048, 101 Lab.Cas. P 11,094
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
Millmen, Cabinetmakers, Industrial Carpenters Local No. 550,
United Brotherhood of Carpenters and Joiners of America,
AFL-CIO; Millmen and Industrial Carpenters Local No. 262,
United Brotherhood of Carpenters and Joiners of America,
AFL-CIO; and Millmen, Cabinetmakers and Industrial
Carpenters Union Local No. 42, United Brotherhood of
Carpenters and Joiners of America, AFL-CIO, Intervenors,
v.
LUMBER AND MILL EMPLOYERS ASSOCIATION, Respondent.
 No. 83-7117.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 10, 1984.
Decided June 27, 1984.
 
 Howard Perlstein, NLRB, Washington, D.C., for petitioner.
 A.K. Abraham, Robert M. Cassel, Berman, Cassel & Carter, San Francisco, Cal., for respondent.
 On Application for Enforcement of An Order of the National Labor Relations Board.
 Before SNEED and FLETCHER, Circuit Judges, and BURNS,* District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Petitioner National Labor Relations Board (Board) applies for enforcement of its order finding that Lumber and Mill Employers Association (Association) violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(5) and (1), by refusing to provide Millmen, Cabinetmakers, Industrial Carpenters Union Local No. 550 (Union) with a membership roster and a copy of its bylaws. We order enforcement.
 
 I.
 FACTS
 
 2
 Between April and July, 1981, the Union and the Association negotiated for a successor to their 1978-1981 "Master Agreement." At the inception of these negotiations, the Association provided the Union with a list of 52 companies it would be representing for purposes of the new agreement. The Union thereafter requested a complete list of Association members, including firms that had contracted with other unions but performed the type of work covered by the collective bargaining agreement. The Union also requested a copy of the Association's bylaws, which set forth the terms made binding on member employers of the Association. The Association refused both requests. On July 29, 1981, the two parties signed a Master Agreement for 1981-1984. The addendum to the agreement listed 31 companies which were bound to the new contract.
 
 
 3
 The Union filed an unfair labor practice charge against the Association over its refusal to provide the requested information. The Board held that the Association had violated sections 8(a)(5) and (1) of the Act and ordered the Association to furnish the Union with (1) a copy of the portions of its bylaws that grant it authority to bargain collectively for its members and (2) a list of Association members who performed the type of work covered by the parties' 1981-1984 agreement and were not already included in the addendum to the agreement.
 
 II.
 DISCUSSION
 
 4
 An employer has an obligation to furnish information relevant to a Union's negotiation or administration of a collective bargaining agreement. Detroit Edison Co. v. NLRB, 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1979); NLRB v. Associated General Contractors, Inc., 633 F.2d 766, 770 (9th Cir.1980), cert. denied, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981). A "liberal, discovery-type standard" is used to determine what constitutes relevant information. Associated General Contractors, 633 F.2d at 770 (citing NLRB v. Acme Industrial Co., 385 U.S. 432, 437, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967)). In establishing relevance the Union must offer more than "mere 'suspicion,' " but no "initial, burdensome showing" is required. San Diego Newspaper Guild v. NLRB, 548 F.2d 863, 868 (9th Cir.1977). The Board's determination on this issue is given "great weight" on review "either because it is a finding of fact, which is conclusive if supported by substantial evidence, or because it is a finding on a mixed question of law and fact which is within the expertise of the Board." NLRB v. Associated General Contractors, 633 F.2d at 770.
 
 
 5
 Applying the "liberal, discovery-type standard," substantial evidence supports the Board's finding that the requested information was relevant. The Association was the sole negotiator for member firms, and its members were bound to its agreements by virtue of its bylaws. Membership in the Association had decreased substantially in recent years, and several companies that had been bound to the previous Master Agreement were contracting through new agents. Given these facts, portions of the Association's bylaws and membership roster were relevant to three specific Union needs. First, the Union wanted to establish for itself that the bylaws would legally bind member firms to the new Master Agreement. Second, the Union wished to determine whether former Association members now bargaining through other organizations were still contractually bound to negotiate through the Association. The large decrease in the number of firms party to the 1981-1984 agreement justified the Union's concern that perhaps some non-signatory firms remained members of the Association and hence should have been bound to the new agreement. Finally, the membership list responded to the Union's fear that member employers might be operating non-union shops at secondary locations in violation of the agreement. To support this contention, the Union had pointed to a member firm with one listed address, but two business locations. Under these circumstances, substantial evidence supports the Board's finding that the items ordered to be provided were relevant to Union needs.
 
 
 6
 The Association also contends that providing the list of signatory members appended to the 1981 agreement responded fully to the Union's request for information and mooted this case. We disagree. During negotiations the Union set forth its reasons for requesting a copy of the bylaws and a membership roster. These reasons included the fact that the Union was interested in using the bylaws to uncover possible "double-breasting" by member firms and to determine whether firms not listed in the addendum to the 1981 agreement might nonetheless be bound by the agreement. The addendum to the 1981 agreement would not serve this purpose adequately. This case is not moot.
 
 
 7
 ENFORCEMENT ORDERED.
 
 
 
 *
 Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation